**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **STEPHANIE CAMPBELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION FILE NO.** |
| **v.** | ) | **1:21-cv-01471-CAP-CCB** |
| | ) | |
| **LEVON ALLEN, individually and in** | ) | |
| **his official capacity as the Sheriff** | ) | |
| **of Clayton County, GA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

### DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 12(c), Defendant Levon Allen, in his official capacity as the Sheriff of Clayton County and in his individual capacity, respectfully moves the Court to partially dismiss Plaintiff Stephanie Campbell's Second Amended Complaint with prejudice for the following reasons:

1. Eleventh Amendment immunity bars Plaintiff's claims for damages under Title I of the Americans with Disabilities Act, 42 U.S.C. §12111, *et seq.* as amended (the "ADA");

2. Defendant has not waived its Eleventh Amendment immunity;

3. The Ex Parte Young exception is not available and thus Plaintiff is barred from equitable relief under the ADA; and

4.  Defendant Allen cannot be held individually liable under either the ADA or the Rehabilitation Act.

Accordingly, the Court should dismiss Plaintiff's ADA claim (Count III) with prejudice, as well as the ADA and Rehabilitation Act claims against Allen in his individual capacity.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On September 26, 2019, Plaintiff filed her Complaint against then-Sheriff Victor Hill in his individual and official capacity as the Sheriff of Clayton County, Georgia, and three unnamed Clayton County Sheriff Office employees, based on allegations concerning her voluntary resignation from the Sheriff's Office. On April 13, 2021, Defendants removed the case to this Court [Doc. 1] and Plaintiff thereafter filed her First Amended Complaint [Doc. 3], which included claims for disability discrimination under O.C.GA §34-6A-4 and the Rehabilitation Act of 1973, 29 U.S.C. §794, et seq. (the "Rehabilitation Act").  The case was subsequently stayed for an extended period of time pending the conclusion of a criminal trial involving Victor Hill.  During that stay, on May 31, 2022, Plaintiff filed a Second Amended Complaint, which included an additional allegation of disability discrimination under the ADA. [Doc. 18]. In connection with her ADA claim, Plaintiff seeks damages and equitable relief, including reinstatement, front pay (in lieu of

reinstatement), and backpay. [Doc. 18].[1]

Since that time, then-Defendant Hill underwent trial, was convicted (though he intends to appeal), and retired from office. He was subsequently replaced by the interim Sheriff and current Defendant Levon Allen. On March 21, 2023, the Parties moved to reopen the case and correct style [Doc. 22]. The Court subsequently issued an order re-opening the case on March 31, 2023. [Doc. 23].

## II.    ARGUMENT AND CITATION OF AUTHORITY

### A.    Standard on a Motion for Judgment on the Pleadings.

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Cannon v. City of West Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001). Motions for judgment on the pleadings are evaluated using the same standard as a Rule 12(b)(6) motion to dismiss. See Sampson v. Washington Mut. Bank, 453 Fed.Appx. 863, 865 n.2 (11th Cir. 2011).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

---

[1] On June 1, 2022, the Court entered an order permitting the Defendant to respond to Plaintiff's Second Amended Complaint within 21 days after the stay was lifted. [Doc. 20].

Twombly, 550 U.S. 544, 570 (2007)). Although all reasonable inferences should be drawn in favor of the plaintiff, the plaintiff must still meet the minimal pleading requirements. See Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993); Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006). Thus, a claim can survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. However, regardless of the sufficiency of the facts alleged, dismissal is also appropriate "when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty., 992 F.2d at 1174.

**B.    Sheriff Allen, in his Official Capacity, is Entitled to Eleventh Amendment Immunity from Plaintiff's ADA Claims.**

The Eleventh Amendment bars suits brought in federal court when a state is sued in federal court, unless the state consents to suit or waives its immunity. Manders v. Lee, 338 F.3d 1304, 1308. (11th Cir. 2003) (quoting U.S. Const. Amend. 11).  See also Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 73 (2000) ("[F]or over a century now, we have made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States.").  This type of immunity also shields "arms of the State" from suit. See N. Ins. Co. of N.Y. v. Chatham Cnty., Ga., 547 U.S. 189, 193 (2006).

1.   **<u>Sheriff Allen is an Arm of the State</u>**.

For Eleventh Amendment immunity to apply, Sheriff Allen "need not be labeled a state officer or state official, but instead need only be acting as an arm of the State, which includes agents and instrumentalities of the State." <u>Manders</u>, 338 F.3d. at 1308. To make this determination, the Eleventh Circuit requires courts to weigh the following factors: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." <u>Pellitteri v. Prine</u>, 776 F.3d 777, 779-80 (11th Cir. 2015). These factors support the Court finding that Eleventh Amendment immunity bars Plaintiff's ADA claims against Sheriff Allen in his official capacity.

The first two factors weigh heavily in favor of immunity. Georgia's Constitution "grants the state legislature the exclusive authority to establish and control a sheriff's powers, duties, qualifications, and minimum salary." Ga. Const. art. IX, § 1, P 3(a)-(b). As a result, "employees of constitutionally elected officers of a county are considered employees of the elected officer and not employees of the county, as represented by the local governing authority." <u>Boswell v. Bramlett</u>, 274 Ga. 50, 51, 549 S.E.2d 100, 102 (2001). In the employment context, a Georgia county "does not, and cannot, direct the Sheriff ... how to hire, train, supervise, or discipline his deputies, what policies to adopt, or how to operate his office."

Cunningham v. Fulton Cty., 785 F. App'x 798, 802 (11th Cir. 2019) (citing Grech v. Clayton Cty., 335 F.3d 1326, 1347 (11th Cir. 2003)). Rather, state law "specifies qualifications and training of sheriffs, sets minimum salaries for sheriffs, allows sheriffs to directly appoint deputies, and provides a mechanism for the Governor to investigate sheriffs' improprieties." King v. King, No. 5:17-CV-24 (MTT), 2017 U.S. Dist. LEXIS 147129, at *7 (M.D. Ga. Sep. 12, 2017) (citing O.C.G.A. §§ 15¬16-1; 15-16-3; 15-16-20; O.C.G.A. § 15-16-26; O.C.G.A. § 15-16-23).

As a result, courts in the Eleventh Circuit routinely find Georgia constitutional officers, like Sheriff Allen, act as arms of the state when overseeing employment functions. Purcell ex rel. Est. of Morgan v. Toombs Cty., Ga., 400 F.3d 1313, 1325 (11th Cir. 2005); Manders, 338 F.3d at 1315 (finding Georgia sheriff's "authority and duty to administer the jail in his jurisdiction flows from the State, not [the county]"); Pellitteri v. Prine, 776 F.3d 777, 780-83 (11th Cir. 2015) (hiring and firing sheriff's office employees is a state function). For example, in Pellitteri, the Eleventh Circuit held Eleventh Amendment immunity barred the plaintiff's ability to pursue claims under the Americans with Disabilities Act against a Georgia county sheriff for an alleged wrongful termination. Id. at 783. Pellitteri holds that a Georgia sheriff acts as "an arm of the state" when exercising hiring and firing power over employees. Id. at 779-80.

Here, Plaintiff lacks any basis to argue the first two factors weigh against Eleventh Amendment immunity. Clayton County has no authority to supervise the Sheriff's Office employees, establish their work schedules, or direct their work assignments. Massengale v. Hill, No. 1:05-CV-189-TWT, 2005 U.S. Dist. LEXIS 48827, at *25 (N.D. Ga. July 25, 2005). Instead, that authority rests solely in the hands of the Clayton County Sheriff. Id. Because the County plays no role in the employment relationship, Plaintiff cannot show that then-Sheriff Hill acted in any capacity other than as an arm of the state when the employment decisions at issue in this case were made. Thus, Plaintiff lacks even a weak basis to argue the first two factors weigh against immunity.

With respect to the third and fourth factors, the Eleventh Circuit generally weigh these factors in favor of immunity. Lake v. Skelton, 840 F.3d 1334, 1344 (11th Cir. 2016). "Counties may not dictate how the sheriff's office spends the funds." Stephens v. Fulton Cty., No. 1:16-cv-3461-RWS-JKL, 2018 U.S. Dist. LEXIS 241874, at *11-12 (N.D. Ga. June 15, 2018) (citing Lake, 840 F.3d at 1344 ("state pays for some of the operations of the sheriff's office, and the county bears the major burden of funding [the sheriff's] office ... because the State so mandates."). Additionally, a county may not dictate to the sheriff "how that budget will be spent in the exercise of his duties." Manders, 338 F.3d at 1323 (quoting Chaffin v.

Calhoun, 262 Ga. 202, 203-04, 415 S.E.2d 906 (1992)). Because the County does not dictate how Sheriff Allen operates the CCSO's law enforcement operation, including how he staffs and employs individuals like Plaintiff, immunity is further supported.

In light of the foregoing, this Court should decide as a matter of law that Sheriff Allen is an "arm of the State," as was then-Sheriff Hill when the relevant employment actions were taken.

### 2.     The Sheriff Did Not Waive Immunity from Liability by Removing this Case to Federal Court.

As noted above, then-Defendant Hill previously removed this matter from state court to federal court.  Relevant here,  in  Stroud v. McIntosh, 722 F.3d 1294, (11th Cir. 2013), the Eleventh Circuit addressed (1) whether removal of an ADEA case waived a state agency's Eleventh Amendment sovereign immunity *from suit* in a federal court, and (2) whether removal also waived the agency's sovereign immunity *from liability* on that claim.  See Stroud, 722 F.3d at 1296.  In considering this issue, the Eleventh Circuit first noted that the Supreme Court had previously found that Congress was without authority to abrogate states' sovereign immunity against ADEA claims.  Id. at 1298 (citing Kimel, 528 U.S. at 73).  Then, relying on

the Supreme Court's decision in <u>Lapides v. Bd. of Regents</u>, 535 U.S. 613 (2002),[2] the Eleventh Circuit determined that "although the Board's removal to federal court waived its immunity-based objection to a *federal forum*, the Board retained its immunity from *liability* for a violation of the ADEA." <u>Stroud</u>, 722 F.3d at 1301 (emphasis in italics). This is because "nothing in *Lapides* suggests that a state waives any defense it would have enjoyed in state court – including immunity from liability for particular claims." <u>Id.</u> at 1302. In other words, a state retains its Eleventh Amendment sovereign immunity from liability despite the removal of a claim from state court, provided that Congress has not abrogated immunity from the claim and the state has not otherwise consented to be sued. <u>Id.</u> at 1303.

As a result, while Defendant Allen may have waived immunity from suit by removing Plaintiff's claims to this Court, he maintains immunity from liability under the Eleventh Amendment as to any claims for which there has been no abrogation of immunity.

---

[2] In <u>Lapides</u>, the Supreme Court held that because, following removal, the only remaining claim was a state law claim to which Georgia had waived its immunity-based objection to suit in its *own* courts, Eleventh Amendment sovereign immunity had been waived. However, the Court expressly limited its holding to "state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings." 22 S. Ct. at 1643. The opinion declined to "address the scope of waiver by removal in a situation where the State's underlying sovereign immunity from suit has not been waived or abrogated in state court." 122 S. Ct. at 1643.

**3. Neither Congress Nor the State of Georgia Have Abrogated Eleventh Amendment Immunity from Federal ADA Claims.**

It is well settled that Title I of the ADA is not a valid abrogation of an arm of the state's Eleventh Amendment immunity from damages. See Board of Trustees of Univ. of Al. v. Garrett, 531 U.S. 356 (2001) (holding that Congress did not validly abrogate states' Eleventh Amendment immunity from employment-related lawsuits under Title I of the ADA). Thus, "Eleventh Amendment sovereign immunity remains applicable to employment discrimination claims brought against states or state agencies under Title I of the ADA, unless it can be shown that [the state] [has] consented to suit." Sanford v. Ga. Dep't of Pub. Safety, No. 1:20-CV-4532-AT-JSA, 2021 WL 3073696, at *9 (N. D. Ga. June 7, 2021). See also Keeler v. Florida Dept. of Health, 324 F. App'x 850, 854 n. 2 (11th Cir. 2009) (noting district court ruling dismissing ADA money damages claim against Florida agency on Eleventh Amendment grounds); Rylee v. Chapman, 316 F. App'x 901, 904 (11th Cir. 2009).

While Georgia has enacted a Fair Employment Practices Act ("FEPA") O.C.G.A. § 45-19-21 et seq., as well as O.C.G.A. § 34-6A-6, both of which permit state law claims for disability discrimination, under binding Supreme Court and Eleventh Circuit precedent, the existence of a Georgia law allowing recovery for state disability claims is not even relevant to whether Georgia waived its sovereign immunity for *federal* disability claims. Sanford, 2021 WL 3073696, at *9 (citing

Stroud, 722 F.3d at 1297–98); Kimel, 528 U.S. 62. "This is because a state's sovereign immunity in its own courts is distinct from the sovereign immunity it enjoys in federal court," and the state's sovereign immunity is preserved by the Eleventh Amendment. Id. The Eleventh Circuit, relying on Supreme Court precedent, recognized that–even after removal–"[a] state does **not** waive immunity against a federal law by waiving immunity against a similar state law." Stroud, 722 F.3d at 1299 n.2 (citing Kimel, 528 U.S. at 91–92) (emphasis added).

In Kimel, after finding that Congress had not validly abrogated the states' sovereign immunity to suits under the Age Discrimination in Employment Act, the Supreme Court recognized that its ruling had no effect on state court remedies that may still exist. Kimel, 528 U.S. at 91-92. "State employees are protected by state age discrimination statutes and may recover money damages from their state employees, in almost every State of the Union. Those avenues of relief remain available today." Id. In other words, Kimel recognized that regardless of the similarity between state and federal causes of action, each exists independently and requires independent analysis of the state's waiver of sovereign immunity. And, unless a state has waived its sovereign immunity for a federal claim, a state retains its sovereign immunity from federal claims, even when those federal claims are similar to state causes of action for which immunity has been waived. See Stroud,

722 F.3d at 1297-98; <u>Port Auth. Trans-Hudson Grp. v. Feeney</u>, 495 U.S. 299, 306 (1990); <u>Crisman v. Fla. Atlantic Univ. Bd. of Trs.</u>, 572 F. App'x 946, 947-48 (11th Cir. 2014) (per curiam).

In short, federal courts have an independent obligation to determine whether a state has waived its sovereign immunity for a claim in federal court. <u>See Atascadero State Hosp. v. Scanlon</u>, 473 U.S. 234, 239–240 (1985); <u>Barnes v. Zaccari</u>, 669 F.3d 1295, 1308 (11th Cir. 2012). A "state will be deemed to have waived its immunity only where stated by the most express language or by such overwhelming implication from the text will leave no room for any other reasonable construction." <u>Scanlon</u>, 473 U.S. at 239–240. "The test to determine if a state has waived its sovereign immunity is a stringent one." <u>Barnes</u>, 669 F.3d at 1308 (cleaned up).

It should also be noted that courts in this Circuit have routinely found that Georgia's FEPA contains no such express waiver and that the FEPA thus did not waive the State's waiver of its sovereign immunity for Title I ADA claims. <u>See Sanford</u>, 2021 WL 3073696, at * 9 (FEPA does not expressly waive Georgia's sovereign immunity to suit in federal courts); <u>Jackson v. Oconee Cmty. Serv. Bd.</u>, No. 5:06-CV-55-WDO, 2006 WL 1652236, at *3 (M.D. Ga. June 8, 2006) (FEPA's provisions "do not indicate" that the State waived its Eleventh Amendment

immunity from suit in federal court); Walker v. Georgia, No., 2005 WL 8154325, at * 8  (N.D. Ga. August 8, 2005); Gary v. Ga. Dep't of Human Res., 323 F.Supp.2d 1368, 1372 (M.D. Ga. 2004) (State did not consent to being sued in federal court for violations of the ADA); Laster v. Georgia Dep't of Corrections, No. 5:21-cv-00464-TES, 2022 WL 4450485, at * 6 (M.D. Ga. Sept. 23, 2022) (finding no "explicit consent" by Georgia for a Title I ADA suit).  The common conclusion in these cases is that FEPA contains no "express language" waiving the State's sovereign immunity in FEPA for federal disability claims, and the same is true of O.C.G.A. § 34-6A-6.

Nevertheless, it should be noted that in Williamson v. Dep't of Human Resources, 258 Ga. App. 113, 116 (2002), a panel of the Georgia Court of Appeals erroneously disregarded the above authority, and found that the FEPA constituted an abrogation of immunity as to federal ADA claims.  But  Williamson "does not save [Plaintiff's ADA] claim" from Eleventh Amendment immunity for the simple reason that it was wrongly decided under Georgia law and need not (and should not) be followed by this Court. Sanford, 2021 WL 3073696, * 9.  See Turner v. Wells, 879 F.3d 1254, 1262 (11th Cir. 2018) ("[a]s a general matter, we must follow the decisions of [state] intermediate courts[,] … [however] we may disregard these decisions if persuasive evidence demonstrates that the highest court

would conclude otherwise"). The <u>Williamson</u> Court's opinion hinged primarily on the faulty reasoning that it would violate the Supremacy Clause if the court found that the state waived its sovereign immunity as to state disability discrimination claims, but not ADA claims. <u>Williamson</u>, 258 Ga. App. 113 at 681. The cases upon which the <u>Williamson</u> court based its opinion, however, do not support its holding. <u>Williamson</u>, (citing <u>McKnett v. St. Louis & C. R. Co.</u>, 292 U.S. 230 (1934); <u>Howlett v. Rose</u>, 496 U.S. 356 (1990) and <u>Collins v. Dep't of Transp.</u>, 208 Ga. 53 (1993)). *None* of the cases <u>Williamson</u> cites stand for the proposition that a state's wavier of sovereign immunity for a *state* statute equates with the state's waiver for a *federal* statute. Indeed, the court's reasoning in <u>Williamson</u> is fatally undermined by the Supreme Court's holding in <u>Kimel</u> that found the opposite: there is no waiver of sovereign immunity for federal claims just because there is a similar state cause of action. <u>Kimel</u>, 528 U.S. at 91-92; <u>see also</u> <u>Stroud</u>, 722 F.3d at 1297-98.

Significantly, when deciding that the State waived its immunity for ADA claim, the <u>Williamson</u> panel also gave short shrift to the critical, *required* analysis for a waiver of sovereign immunity under Georgia law. Under Georgia's constitution, "the sovereign immunity of the State and its departments and agencies can **only** be waived by an Act of the General Assembly which **specifically** provides that sovereign immunity is thereby waived and the extent of such waiver." Ga.

Const. of 1983, Art. I, Sec. II, Par. IX (e) (emphasis added). "Such a waiver must be specific because '[t]he state is not bound by the passage of a law unless it is named therein or unless the words of the law are so plain, clear, and unmistakable as to leave no doubt as to the intention of the General Assembly.'" <u>Board of Regents of the Univ. Sys. of Ga. v. One Sixty Over Ninety, LLC</u>, 351 Ga. App. 133 (2019) (quoting O.C.G.A. § 1-3-8). In turn, Georgia law retains the State's sovereign immunity from claims brought in federal court:

> The state waives its sovereign immunity only to the extent and in the manner provided in this article and only with respect to actions brought in the courts of the State of Georgia. **The state does not waive any immunity with respect to actions brought in the courts of the United States.**

O.C.G.A. § 50-21-23(b) (emphasis added).[3]

The General Assembly "is not required to use specific 'magic words' such as 'sovereign immunity is hereby waived'"; however, the statute at issue should contain language "expressly waiving the state's sovereign immunity." <u>One Sixty Over Ninety</u>, 351 Ga. App. at 139. The Georgia Supreme Court has instructed that implied waivers "should not be favored." <u>Georgia Dep't of Corrections v. Couch</u>,

---

[3] Even when the state removes a case, removal only waives immunity from suit, not immunity from liability unless the state has specifically waived its sovereign immunity from liability in federal court. <u>Stroud</u>, 722 F.3d at 1302; <u>Lapides</u>, 535 U.S. at 617.

295 Ga. 469, 473 (2014). In fact, in the only case in which the Georgia Supreme Court cites (but does not address) <u>Williamson</u>, it was in the context of an analysis noting that a waiver of sovereign immunity is only waived "with respect to the **specific claim authorized by statute,**" which, in FEPA, is a *state* disability claim– not a *federal* disability claim. <u>Colon v. Fulton Co.</u>, 294 Ga. 93, 95 (2013) (emphasis added), *overruled on other grounds by* <u>Rivera v. Washington</u>, 298 Ga. 770, 778 n.4 (2016).

Critically, in its decision, the <u>Williamson</u> Court did not identify *any* language in FEPA (or any other statute) where the General Assembly expressly waived the State's sovereign immunity from liability for *federal* disability discrimination. There is no such language in FEPA. The glaring absence of that language, alone, refutes any argument that FEPA "expressly" and "specifically" waives the State's sovereign immunity for federal disability claims. Based on a plain reading of FEPA, Georgia, at most, has waived its sovereign immunity for state disability claims in state court. <u>Colon</u>, 294 Ga. at 95.  In the absence of express language otherwise, the State has not waived its sovereign immunity for federal disability claims–in either state or federal courts. Accordingly, Sheriff Allen in his official capacity has Eleventh Amendment immunity from Plaintiff's ADA claims.

**4.     The *Ex Parte Young* Exception is Not Applicable to Plaintiff's Equitable Claims Under the ADA.**

To the extent Plaintiff maintains she can obtain injunctive relief under the ADA (such as reinstatement) pursuant to Ex Parte Young Bd. of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 374, n. 9 (2001), she is incorrect. Ex Parte Young, in general, allows plaintiffs to pursue prospective equitable relief even when the defendant has Eleventh Amendment immunity from liability for monetary damages. Board of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 374 n.9 (2001) (recognizing application of Ex Parte Young in Title I ADA claims); Lane v. Cent. Ala. Cmty. Coll., 772 F.3d 1349, 1351 (11th Cir. 2014). However, Ex Parte Young does not provide an exception to Eleventh Amendment immunity for Plaintiff's ADA claims under the unique facts of this case, because reinstatement by the new Sheriff is not an available remedy, and the Sheriff's Eleventh Amendment immunity bars backpay and front pay, the only other equitable remedies Plaintiff seeks.

Defendant Allen does not dispute that, ordinarily, reinstatement falls within the scope of the Ex Parte Young exception. However, the applicable Eleventh Circuit precedent (as well as precedent from other jurisdictions) holds that reinstatement is not an available remedy when a **constitutional officer is replaced by a new official**. See Kicklighter v. McIntosh Cnty. Board of Comm'rs, 694 Fed. App'x. 711, 716

(11th Cir. 2017) ("However, we have upheld the district court's decision to deny a plaintiff the remedy of reinstatement where the defendant public official was replaced by a new official."); Lucas v. O'Loughlin, 831 F.2d 232, 236 (11th Cir. 1987) (trial court did not err in denying reinstatement when the "sheriff's term...expired while the litigation was proceeding, and a new sheriff had been elected" who could terminate him following reinstatement simply because he preferred who he already had in place). See also Manders v. Lee, 338 F.3d 1304, 1310 (11th Cir. 2003) (a county sheriff is an elected constitutional officer under Georgia's Constitution"); Ga. Const. art. IX, § 2, ¶ 1(c)(1).

In Lucas, the plaintiff sought reinstatement by the sheriff; however, during the course of the litigation, a new sheriff was elected. As a result, the Eleventh Circuit upheld the district court's finding that the plaintiff's request for reinstatement was "*de minimis*," because the Court recognized that the new sheriff could simply "terminate [the plaintiff] the same day on the ground that [the new sheriff] preferred the person whom he had already appointed in the [plaintiff's] place." Lucas, 831 F.2d at 236. A similar result was reached by a federal district court in South Carolina based on the replacement of the former-sheriff, who made the relevant underlying decisions, with a new sheriff. See Ackerman v. Graziano, 2:19-1811-RMG-KFM, 2022 WL 2068830, *13 (D.S.C. Mar. 22, 2022) (plaintiff's claims for injunctive

relief should also be dismissed, as the claims are either moot or not prospective), adopted by 2022 WL 1638770, *3 (D.S.C. May 24, 2022) (emphasis added).

As in Lucas and Ackerman, Plaintiff seeks reinstatement to a position she held under the former sheriff, Victor Hill. Hill, however, is no longer the sheriff and his powers and duties ended when he left office. See O.C.G.A. § 15-16-23; Pellitteri, 776 F.3d at 780 ("The Georgia legislature has enacted laws giving sheriffs alone the power to hire their deputies, independent of any influence from county governments."). The current Sheriff, Levon Allen, has the ability to choose his own employees and, following Kicklighter, he cannot be required to accept plaintiff in her former position. Accordingly, Plaintiff is not entitled to reinstatement as a matter of law in this case, and it is not an available remedy.

Plaintiff also cannot obtain front pay in lieu of reinstatement under the Eleventh Amendment.  Unlike reinstatement, backpay and front pay necessarily implicate "sovereign interests and funds," and, therefore are barred by the Sheriff's Eleventh Amendment immunity. Cf. Lane, 772 F.3d at 1351; Williams v. Dewey, No., 2016 WL 890575, at *2 (M.D. Ga. 2016) (citing Campbell v. Ark. Dep't of Corr., 155 F.3d 950, 962 (8th Cir. 1998).  See also Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 696-97 (3d Cir. 1996); Freeman v. Mich. Dep't of State, 808 F.2d 1174, 1179 (6th Cir. 1987); Ponsell v. Royal, No. CV 514–042, 2015 WL

1223994 at *4 (S.D. Ga. Mar. 17, 2015); <u>Wood v. Dixon</u>, No. 13–0278–KD–N, 2013 WL 6183143 at *3 n.3 (S.D. Ala. Nov. 26, 2013); <u>Pechon v. La. Dep't of Health and Hosp.</u>, No. 08-0664, 2009, WL 2046766 at *10 (E.D. LA. July 14, 2009)). While "front pay is sometimes awarded as an alternative to the equitable remedy of reinstatement," that is not the correct analysis for Eleventh Amendment purposes because awards of front pay "must be paid from public funds in the state treasury." <u>Id.</u> (quoting <u>Campbell</u>, 155 F.3d at 962). Such damages are barred by the Elventh Amendment.  Accordingly, Plaintiff cannot obtain any of the relief she seeks under the ADA, and that claim should be dismissed with prejudice as to Sheriff Allen in his official capacity.

**C.** **<u>Sheriff Allen Cannot Be Held Individually Liable Under the ADA or the Rehabilitation Act</u>.**

Plaintiff sues Sheriff Allen individually and in his official capacity for all causes of action.  However, it is axiomatic that there is no individual liability under the ADA.  <u>See</u> <u>Mason v. Stallings</u>, 82 F.3d 1007, 1008 (11th Cir. 1996) (concluding that Title I of the ADA provides only for employer liability, not individual liability); <u>Pritchard v. Southern Company Services</u>, 102 F.3d 1118, 1119 (11th Cir. 1996) (same); <u>Williams v. Fulton County School District</u>, 181 F.Supp.3d 1089, 1140 (N.D. Ga. 2016).

The same is true of the Rehabilitation Act.  Such a claim requires proof that the defendant received "federal financial assistance."  See McMullen v. Walkully Cnty. Bd. of City Commers, 650 Fed.App'x 703, 704 (11th Cir. 2016). Consistent with that approach, the Eleventh Circuit has held that there is no individual capacity liability under the Rehab Act.  Badillo v. Thorpe, 158 Fed.App'x. 208, 211 (11th Cir. 2005).  See also Berkery v. Kaplan, 518 Fed. Appx. 813, 814-815 (11th Cir. 2013) (affirming district court's dismissal of plaintiff's claim under the Rehab Act, because "Dr. Kaplan's medical services are not a 'program or activity' as that term is defined under the act…nor does the act provide for individual liability");[4] Chambers v. Pounds, No. 1:21-cv-112-CAP-JKL, 2021 WL 4995821, at *3 (N.D. Mar. 10, 2021), report and recommendation adopted by 2021 WL 4995822 (N.D. Ga. Mar. 30, 2021); Buford v. Alabama Dep't of Corrections, No. 20-0006-WS-N, 2020 WL 587647, at *1 (S.D. Ala. February 6, 2020) ("Badillo is not the only authority supporting the proposition: the Second, Third, Fourth, Sixth, Seventh and Eighth Circuits have all reached the same conclusion."); Williams v. Fulton County School District, 181 F.Supp.3d 1089, 1140 (N.D. Ga. 2016).

---

[4] See also Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) (explaining that § 504 of the Rehabilitation Act does not provide for individual capacity suits).

Here, Plaintiff does not (and cannot) allege that Defendant Allen, individually, or then-defendant Hill, individually, receive federal financial assistance and, in any event, the Rehab Act does not impose individual liability. Accordingly, Plaintiff's Rehab Act claims against Defendant Allen in his individual capacity must be dismissed.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant this motion and dismiss Plaintiff's ADA claims with prejudice, as well as the ADA and Rehabilitation Act claims against Allen in his individual capacity.

Respectfully submitted this 11th day of April, 2021.

**FREEMAN MATHIS & GARY, LLP**

/s/ *John D. Bennett*
John D. Bennett
Georgia Bar No. 515005
jbennett@fmglaw.com
Lucas B. Zavoli
Georgia Bar No. 758581
luke.zavoli@fmglaw.com

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
T:  (770) 818-0000
F:  (770) 937-9960
*Counsel for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **STEPHANIE CAMPBELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION FILE NO.** |
| **v.** | ) | **1:21-cv-01471-CAP-CCB** |
| | ) | |
| **LEVON ALLEN, individually and in** | ) | |
| **his official capacity as the Sheriff** | ) | |
| **of Clayton County, GA,** | ) | |
| | ) | |
| **Defendant.** | | |

### <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing brief has been prepared in compliance with Local Rule 5.1(B) in 14-point New Times Roman type face.

/s/ *John D. Bennett*
John D. Bennett
Georgia Bar No. 515005
jbennett@fmglaw.com

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
T: (770) 818-0000
F: (770) 937-9960
*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the within and foregoing

**<u>DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE</u>**

**<u>PLEADINGS AND MEMORANDUM OF LAW IN SUPPORT</u>** to the Clerk of

Court using the CM/ECF E-filing system which will automatically send electronic mail

notification of such filing to counsel of record in this matter as follows:

Regan Keebaugh
Radford & Keebaugh, LLC
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030

This 11th day of April, 2023.

/s/ John D. Bennett
John D. Bennett
Georgia Bar No. 059212