IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| STEPHANIE CAMPBELL,<br><br>Plaintiff,<br><br>v.<br><br>LEVON ALLEN, individually and in his official capacity as Sheriff of Clayton County, Georgia,<br><br>Defendant. | Civil Action File No.<br><br>1:21-cv-01471-CAP-CCB |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant filed a motion for judgment on the pleadings on April 11, 2023. Doc. 25. Plaintiff Stephanie Campbell ("Ms. Campbell") responds in opposition to Defendant's motion as follows.

Defendant's motion presents essentially two arguments. First, Defendant asserts that Ms. Campbell's claims under the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq.* (the "ADA"), should be dismissed because (1) Defendant claims immunity under the Eleventh Amendment to her ADA claims,[1] and (2) Defendant claims reinstatement under a different Sheriff is unavailable as prospective relief, and therefore the *Ex Parte Young* exception to Eleventh

---

[1] Notably, Defendant does not challenge Ms. Campbell's claims under the Rehabilitation Act against Defendant in his official capacity.

Amendment immunity is inapplicable. However, Defendant's arguments regarding Eleventh Amendment immunity have already been addressed and rejected—three times—by this Court in proceedings which are, in relevant part, identical to Ms. Campbell's case. As to the possibility of reinstatement under *Ex Parte Young*, Ms. Campbell demonstrates below that because she was and is covered by the Clayton County Civil Service Act, reinstatement into her former position is meaningful prospective relief despite the independent nature of sheriffs under Georgia law.

The second argument raised in Defendant's motion is that Sheriff Allen is not liable in his individual capacity to Ms. Campbell. After review of the authority Defendant cites, Ms. Campbell is willing to concede to Allen's dismissal in his individual capacity.

## ARGUMENT AND CITATION TO AUTHORITY

a. **Defendant waived its forum-based Eleventh Amendment immunity by removing this case to federal court and has no subject-matter sovereign immunity against Plaintiff's ADA claims under the Georgia Court of Appeals' decision in *Williamson*.**

Defendant's motion dedicates quite a lot of space to its arguments regarding Eleventh Amendment immunity, but the proper analysis is much simpler than Defendant's motion makes it appear. In a related action, this Court has addressed Defendant's entitlement to and waiver of Eleventh Amendment immunity three times before, twice in Magistrate Judge Anand's Report & Recommendation on a summary-judgment motion and in Judge Boulee's adoption thereof, *Williams v. Hill*,

2

No. 1:20-CV-0186-JPB-JSA, 2022 WL 907789, at *13 (N.D. Ga. Jan. 31, 2022), report and recommendation adopted, No. 1:20-CV-0186-JPB-JSA, 2022 WL 1715212 (N.D. Ga. Mar. 31, 2022), and a third time in Judge Boulee's order on a subsequent motion for judgment on the pleadings much like Defendant's here. *Williams v. Allen*, No. 1:20-CV-00186-JPB, 2023 WL 2977366, at *2 (N.D. Ga. Apr. 17, 2023). As those decisions explain, three cases answer the question of whether Eleventh Amendment immunity is waived under the circumstances presented by this case: *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 620 (2002); *Stroud v. McIntosh*, 722 F.3d 1294 (11th Cir. 2013); and *Williamson v. Dep't of Human Resources*, 258 Ga. Ct. App. 113 (2002).

*Lapides* and *Stroud* establish that when a defendant voluntarily removes a case to federal court, as Defendant did here, they waive forum immunity under the Eleventh Amendment, but they retain any immunity from liability, such as sovereign immunity, they would have had in state court. *Stroud*, 722 F.3d at 1302. *Williamson*, in turn, answers the question of whether immunity from liability exists under state law. In *Williamson*, the Georgia Court of Appeals held that the State of Georgia, including arms of the State such as Defendant, waived immunity from liability against federal ADA claims through the passage of FEPA. *Williamson*, 258 Ga. Ct. App. at 116. Thus, under *Williamson*, Defendant has no sovereign immunity from liability against Ms. Campbell's ADA claims.

3

The Eleventh Amendment immunity analysis should end with *Williamson*, and Judge Anand did in fact end it there. He found that, because of *Williamson*, "[e]ven if Sheriff Hill had attempted to assert a defense of immunity to liability on Plaintiff's ADA claims . . . such an attempt may have been futile." *Williams*, 2022 WL 907789, at *19. Judge Boulee, in ruling on Defendant's motion for judgment on the pleadings in that same case, similarly held, "*Williamson* established that Georgia has waived its sovereign immunity from liability for claims under the ADA." *Williams*, 2023 WL 2977366, at *5.

Defendant's motion does not disagree with the holding or reasoning of *Stroud* and *Lapides* but rather asks the Court simply to ignore *Williamson* and find that the state of Georgia has not waived sovereign immunity to federal ADA claims. Doc. 25 at 10-16. In its own words, Defendant asserts that *Williamson* "was wrongly decided under Geogia law and need not (and should not) be followed by this Court." *Id.* at 13. Judge Boulee thoroughly analyzed and rejected all these same arguments in his ruling on Defendant's motion for judgment on the pleadings in *Williams*, 2023 WL 2977366, and Defendant's motion here should be denied for the same reasons.

The truth is Defendant's multitude of arguments is mostly a regurgitation of other defendants' failed efforts over the past two decades to convince federal courts to ignore *Williamson*. Indeed, the same arguments that Defendant asserts in its present motion were made to this Court in *Echols v. Georgia Piedmont Technical*

4

*College*, No. 1:20-cv-02794-TWT-AJB, 2021 WL 1521987 (N.D. Ga. Jan. 22, 2021). After a thorough analysis, Magistrate Judge Baverman expressed that he "shares Defendants' doubt that *Williamson* was correctly decided," but he also noted that *Williamson* "has stood for eighteen years without having been overruled" and that the Georgia Supreme Court denied a cert petition in *Williamson* itself. *Id.* at *7. Judge Baverman recommended the Court "certify the question to the Supreme Court of Georgia (that is, whether, in enacting the FEPA, the state of Georgia inherently waived sovereign immunity to claims asserted under the ADEA, and grant leave to Defendants to file a renewed motion to dismiss within twenty-one days of the entry of the response to the certified question on this Court's docket." *Id.* at *8. Alternatively, Judge Baverman recommended:

> Should the District Judge disagree with the recommendation to certify the question of whether the state of Georgia has waived its sovereign immunity to employment-discrimination claims asserted under the ADEA, the undersigned ALTERNATIVELY RECOMMENDS that the Court find, based on *Williamson*, that the state waived its immunity. "A federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983); *accord Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 848 (11th Cir. 2018) ("State law is what the state appellate courts say it is, and we are bound to apply a decision of a state appellate court about state law even if we think that decision is wrong."). Such a "court is bound by this rule whether or not the court agrees with the reasoning on which the state court's decision is based or the outcome which the decision dictates." *Silverberg, id.*; *accord Versiglio v. Bd. of Dental Exam'rs of Ala.*, 686 F.3d 1290 (11th Cir. 2012) (recognizing the practice of giving "ordinary deference" to

5

state courts when they interpret matters of state concern and declining to interpret state law in a way that is diametrically opposed to the findings of the state appeals court). <u>While the undersigned sincerely doubts that *Williamson* was correctly decided, those doubts do not amount to a "persuasive indication" that the Supreme Court of Georgia will overturn *Williamson*, given that court's denial of certiorari and the fact that *Williamson* has stood for over eighteen years without having been overruled. The Court also finds that it would be particularly inappropriate for it, as a federal court, to second-guess a state court's determination regarding sovereign-immunity waiver.</u>

*Id.* at *8, fn. 5 (underlining added).

Magistrate Judge Baverman's recommendations in *Echols* were submitted to District Judge Thrash, who ultimately declined both of Judge Baverman's recommendations because:

> [A] question should only be certified on an issue of unsettled state law. And only when the case turns on resolution of the unsettled state law issue . . . In this case the question of whether the state of Georgia has waived its sovereign immunity as to ADEA claims is not outcome determinative of the case. Nor is it even outcome determinative of the Plaintiff's ADEA claim. The proposed certified question only concerns whether the Plaintiff is entitled to money damages if she establishes at trial that her age was a substantial factor in her termination. As Judge Baverman correctly noted, the state's sovereign immunity defense does not preclude an order requiring the individual Defendants (sued in their official capacities) to reinstate the Plaintiff under the *Ex Parte Young* doctrine. The Court sustains this objection to the Report and Recommendation. The Motion to Dismiss is denied as to the ADEA claims.

*Echols v. Georgia Piedmont Technical College*, No. 1:20-cv-02794-TWT, 2021 WL 870717 at *1-2 (N.D. Ga. Mar. 9, 2021).

The *Williams* and *Echols* decisions discussed above provide a clear roadmap

6

as to how this Court should rule on Defendant's present motion. The options, which all result in denying Defendant's motion, include:

1. as Judges Boulee, Anand, and Baverman concluded in *Williams* and *Echols*, deny the motion because this Court is bound to follow *Williamson* and its holding; or

2. as Judge Thrash felt appropriate in *Echols*, deny the motion because the question of whether Georgia has waived sovereign immunity with respect to ADA claims is not outcome-determinative of this case; or

3. certify a question to the Georgia Supreme Court as to whether *Williamson* was correctly decided.

In *Echols*, Judge Thrash held that sovereign immunity was not outcome-determinative because that case also involved the *Ex Parte Young* exception, which allows the pursuit of equitable relief, like reinstatement, even if sovereign immunity bars recovery of damages. This rationale applies equally to this case because Ms. Campbell also seeks reinstatement under *Ex Parte Young*. Moreover, there is an additional reason the applicability of sovereign immunity against Ms. Campbell's ADA claims is not outcome-determinative. Ms. Campbell also asserts claims under the Rehabilitation Act, which mirror her ADA claims and which are not subject to sovereign immunity. Therefore, if sovereign immunity was not outcome-determinative in *Echols*, as Judge Thrash found, it certainly is not here.

Under *Lapides*, *Stroud*, *Williams*on, and the *Echols* and *Williams* decisions, it would be wholly inappropriate and incorrect to grant Defendant's motion and dismiss Ms. Campbell's ADA claims on sovereign immunity grounds. The motion should therefore be denied.

**b.     Because Ms. Campbell was covered by the Clayton County Civil Service Act, reinstatement under *Ex Parte Young* is an available remedy.**

The second part of Defendant's Eleventh Amendment argument looks at standing. Defendant contends Ms. Campbell cannot seek reinstatement under *Ex Parte Young* because Victor Hill was the Sheriff who fired her but he no longer holds the office. In *Williams*, 2023 WL 2977366, at *6, Judge Boulee heard and rejected this same argument as well. The critical fact, as Judge Boulee agreed, is Ms. Campbell's rights and protections under the Clayton County Civil Service System. In short, although most Georgia Sheriffs have complete control over termination decisions, the Clayton County Civil Service Act allows the Sheriff of Clayton County (whether it be Hill, Allen, or anyone else) only to terminate an employee for good cause. As a result, if Ms. Campbell were reinstated, the then-current Clayton County Sheriff could not simply replace her at will. Rather, he could only replace her if he has good cause to do so, and so Defendant's caselaw is inapposite.

All employees of Clayton County, including those of the Clayton County Sheriff's Office, are covered by the Clayton County Civil Service Act, Ga. L. 1994, p. 4400 (the "Act"). *See, e.g.*, *Hill v. Watkins*, 280 Ga. 278 (2006) (holding that the

employees of the Clayton County Sheriff's Office are covered by the Act).[2] Section 4-9 of the Act provides:[3]

> No regular status employee of any department or office of the county which has been brought under the civil service system may be suspended, demoted, or dismissed from employment in the department or office <u>except for good cause and in accordance with civil service system rules and regulations</u>. Any employee who is suspended, demoted, or dismissed <u>shall have the right of appeal pursuant to the terms of the civil service system rules and regulations</u>; provided, however, that this section shall not apply to persons dismissed from any department or office due to curtailment of funds, reduction in staff, or abolition of the job held by such employee. Decisions of the board or hearing officer rendered in accordance with the rules and regulations of the civil service system and which are not contrary to public policy <u>shall be enforced by the governing authority, departments thereof, and elected officials of Clayton County.</u>

(underlining added); *see also Watkins*, 280 Ga. at 279 (the Act "provides that no employee who is covered by the civil service system may be dismissed from employment 'except for good cause and in accordance with the civil service system rules and regulations'"). Therefore, under the Act, as an employee of the Clayton County Sheriff's Office, Ms. Campbell can only be terminated for "good cause," and further, if she is terminated without good cause, she can appeal her termination to

---

[2] Should there be any doubt as to whether employees of the Clayton County Sheriff's Office are covered by the Act, attached hereto as Attachment 1 are recent decisions of the Clayton County Civil Service Board and the Clayton County Superior Court that demonstrate the applicability of the Act to Sheriff's Office employees.

[3] The full text of the Act can be found at: https://library.municode.com/ga/clayton_county/codes/code_of_ordinances?nodeId=PTIRELAPECLCO_ARTIVCISESY.

9

the Civil Service Board, whose decisions "shall be enforced" by "elected officials of Clayton County," including the sheriff. Finally, Section 4-11 of the Act allows an employee to further appeal any decision of the civil service board to the Superior Court of Clayton County.

The Clayton County Civil Service Board (the "Board") is created under Section 4-3 of the Act, and Section 4-12 authorizes the Board to promulgate the Clayton County Civil Service Rules and Regulations, which it has done.[4] The allowable "causes" for termination are set forth in Section 9.206 of the civil service rules. *See* Attachment 2 at DEF00241-243. Further, Section 9.401 of the civil service rules provides:

> **Final Decision of the Board:** All decisions of the Board shall be final in matters pertaining to the appeal of dismissals and suspensions consistent with the applicable provisions of the Act and these Rules and Regulations. Employees who appeals are upheld will, at the direction of the Board, be reinstated with full restoration of all lost pay and benefits and shall resume previous duties without penalty. The Board may also uphold the assessment of such penalties as may be deemed reasonable in the event of conviction of employees in these matters.

---

[4] A certified copy of the Clayton County Civil Service Rules and Regulations is filed as Attachment 2 to this brief.

*Id.* at DEF00245. That is, the Clayton County Civil Service Rules and Regulations specifically provide for "reinstatement with full restoration of all lost pay and benefits" as a remedy to an employee who is terminated without cause. And as noted above, any Clayton County Sheriff is required under the Act to enforce decisions of the Clayton County Civil Service Board, including any decision of the board to reinstate an employee.

Defendant, arguing to the contrary, cites two Eleventh Circuit cases. However, as Judge Boulee explained in *Williams*, 2023 WL 2977366, at *6, the relevant authority is *Watkins*, 280 Ga. 278, and Defendant's caselaw is inapposite because it does not involve employees protected by a civil service system requiring good cause for termination. The plaintiff in *Kicklighter v. McIntosh Cnty. Bd. of Commissioners*, 694 F. App'x 711 (11th Cir. 2017), was a deputy clerk of court who, unlike Ms. Campbell, did not have the protections created by the Clayton County Civil Service Act. Similarly, the plaintiff in *Lucas v. O'Loughlin*, 831 F.2d 232 (11th Cir. 1987), was also not protected by civil service rules and regulations. In *Lucas*, the Sheriff had "absolute and unfettered authority over the appointment, retention, rate of pay and acts of his deputies under the state law," *id.* at 234, and so the Eleventh Circuit concluded that reinstatement in that case was a *de minimis* remedy. *Id.* at 236 (if Lucas "should be reinstated by the order of the court, the new sheriff could terminate him the same day on the ground that he preferred the person whom

11

he had already appointed in Lucas' place."). The *Kicklighter* court, citing *Lucas*, reached the same conclusion on similar facts: "Even if Kicklighter were reinstated, the new clerk 'could terminate [Kicklighter] the same day on the ground that [the new clerk] preferred the person whom he [or she] had already appointed.'" 694 F. App'x at 716 (citing *Lucas*, 831 F.2d at 236).

Here, in stark contrast to *Lucas* and *Kicklighter*, because of the Act and the Civil Service Rules and Regulations, the Clayton County Sheriff does not have "unfettered authority" over the retention of his employees. Rather, he can only terminate employees for good cause. *Williams*, 2023 WL 2977366 at *7 ("Defendant here would be unable to promptly dismiss Plaintiff after reinstating her absent a showing of good cause. On these facts, Plaintiff's request for reinstatement is not *de minimis*.").

For the above reasons, reinstatement in this case is a fully available, non-*de minimis* remedy. Therefore, even if the Court concludes that Defendant has sovereign immunity against Plaintiff's ADA claims, those claims can and should proceed under the *Ex Parte Young* doctrine.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion for judgment on the pleadings.

Respectfully submitted on April 24, 2023.

**Regan Keebaugh**
Georgia Bar No. 535500
*Counsel for Plaintiff*
Regan Keebaugh
RADFORD & KEEBAUGH, LLC
Decatur, GA 30030
(678) 271-0300
regan@decaturlegal.com

# CERTIFICATE OF SERVICE

I certify that on April 24, 2023 I filed the foregoing document through the Court's CM/ECF system, which will send email notification of such filing to all attorneys of record in this matter.

**Regan Keebaugh**
Georgia Bar No. 535500