BEFORE THE CLAYTON COUNTY CIVIL SERVICE BOARD

| | |
|---|---|
| IN THE MATTER OF: | ) |
| | ) |
| RODNEY WILLIAMS, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| | ) Appeal – Termination |
| and | ) |
| | ) |
| CLAYTON COUNTY SHERIFF'S OFFICE | ) |
| | ) |

DECISION OF THE CLAYTON COUNTY CIVIL SERVICE BOARD UPON REMAND FROM THE SUPERIOR COURT OF CLAYTON COUNTY

This matter initially came before the Clayton County Civil Service Board ("the Board") on the appeal of Chaplain Rodney Williams (the "Appellant" or "Chaplain Williams") contesting the decision of the Clayton County Sheriff's Office (the "CCSO") to terminate his employment. A hearing was duly convened before the Board on Wednesday, July 25, 2018, with members Virginia Phillips-Hall, Troyce Lancaster, and Dr. Cephus Jackson present, and Chairman Larry Bartlett presiding.

After conclusion of the hearing on July 25, 2018, the Board entered into executive session to consider the evidence and deliberate on its decision. After coming out of executive session, the Board voted to sustain the appeal and to disapprove the decision of the CCSO to terminate the Appellant's employment. At

1

EXHIBIT "D"

that time the Board also voted to impose a three day suspension without pay upon the Appellant.

The County and Sheriff Victor Hill appealed the Board's decision to the Superior Court of Clayton County (the "Superior Court" or the "Court") asserting that the Board had no authority to impose a three day suspension, and that instead the Board had only two choices under Civil Service Rule 11.310 – to either affirm the dismissal of the Appellant or to reinstate him without penalty.

The Court agreed with the County and on December 21, 2018, it entered an order stating in pertinent part that "the Board must either affirm the dismissal of [Rodney Williams] or reinstate him without penalty," adding that the Board lacked authority "to render an alternative ruling." *Sheriff Victor Hill, Clayton County, Georgia v. Rodney Williams and the Clayton County Civil Service Board*, Civil Action File No. 2018-CV-03843-10, Superior County of Clayton County, Order entered December 21, 2018 by Judge Shana Rooks (the "Court Order").

Judge Rooks remanded this case back to the Board "for further proceedings consistent with these findings," and ordered that "this Court will not re-address the substantive issues concerning the Petitioner's appeal of the Board's decision." Court Order, p. 1.

Upon receiving the remand from the Court, the Board convened its regular monthly meeting on Wednesday, January 23, 2019, and took up this case "for further proceedings consistent with" the Court's findings. Upon reconsideration of the case, including all evidence presented at the hearing held on Wednesday, July

2

25, 2018, and in accordance with the Court Order, the Board hereby SUSTAINS the Appeal, DISAPPROVES the decision to terminate the Appellant's employment, and enters the following findings of fact and conclusions of law in accordance with the Clayton County Civil Service Act and the Clayton County Civil Service Rules and Regulations (the "Civil Service Rules").

FINDINGS OF FACT

1.

At all times relevant to the matters described below, Appellant was employed by the CCSO as a Chaplain, *see* County Exhibit 18, had achieved permanent status under the Civil Service Rules, and was a member of the classified service of Clayton County (the "County").

2.

Chaplain Williams was hired to work for the CCSO on December 13, 2010, and had over 7 years of service when his employment was terminated.

3.

In 2017, a proposal was made to require all chaplains employed by the CCSO to become sworn deputy sheriffs, meaning that they would have to enter into and pass the training academy and carry a badge and a gun.

4.

Chaplain Williams told his supervisor that he did not want to become a deputy sheriff, and the next day, September 1, 2017, he was called into a meeting

where he was informed that his former schedule of 8:00 a.m. to 4:00 p.m. was changed to 3:00 p.m. to 11:00 p.m.

5.

Chaplain Williams testified that from 3:00 p.m. to 11:00 p.m. there was hardly any work for a chaplain to do at the jail. Nevertheless, Chaplain Williams did all of the work assigned to him to the best of his ability.

6.

On Saturday, January 13, 2018, Chaplain Williams reported to work on time and went to his office, where he remained, working, for a good part of the day.

7.

Beginning at 4:30 p.m. that evening, an NFL playoff game between the Atlanta Falcons and the Philadelphia Eagles was televised.

8.

While Chaplain Williams was in his office that evening, he streamed a telecast of the football game on his computer; but while the game was on, he was multitasking by performing a number of duties required of him by the CCSO, and he only watched or listened to about half the game.

9.

While Chaplain Williams was watching or listening to the game, he was working on inmate requests, organizing them and preparing responses to them; and he was also pulling staples from booklets that would be provided to the inmates,

4

since inmates are not allowed to possess staples. He was doing this because there was nobody else available to perform the task.

10.

After completing his work on the inmate requests, Chaplain Williams carried his responses to Housing Units 6 and 8, where he spoke with some of the inmates.

11.

At about 6:45 p.m. that evening, Sergeant Pitts received a phone call from a citizen (Ms. Bolden) who needed a chaplain so she could visit her nephew (an inmate in the jail) to inform him that his mother (her sister) had passed away.

12.

At this time Chaplain Williams was on duty and could have been reached by radio (he did not have a county cell phone). In addition, Chaplain Williams' office telephone had a voice mail feature, but during that period of time he was unable to access his voice mail. He had asked for help with this problem, but the voice mail had not yet been repaired or reset.

13.

The jail call logs showed a total of three phone calls coming in from Ms. Bolden's telephone number to the chaplains' office; however, Chaplain Williams was not on duty when these phone calls came in.

14.

An Internal Affairs investigation was begun to determine where Chaplain Williams was on the day in question, January 13, 2018.

15.

In the course of the investigation, Chaplain Williams' voice mail was accessed; and there were no new, saved or deleted messages from Ms. Bolden.

16.

On the day that Sergeant Pitts received the phone call from Ms. Bolden, she was unaware that Chaplain Williams was on duty. If she had been, she could have put Ms. Bolden in touch with Chaplain Williams.

17.

Sergeant Pitts was also unaware that the chaplains' schedules had changed, and she erroneously believed that an old procedure was still in effect, which involved contacting a chaplain from an "on call" roster.

18.

Sergeant Pitts was unable to locate an on call roster, so she called Chaplain Davis, because he was the first chaplain that came to her mind.

19.

If Sergeant Pitts had been aware that Chaplain Williams was on duty that evening (as he was), she could have easily contacted him, and asked him to serve as the chaplain for Ms. Bolden's visit.

20.

In the IA Report, there is a good summary of the problem that day: "Sergeant Pitts was unaware that Chaplain Williams was in the building and did not attempt to contact Chaplain Williams, and Chaplain Williams was unaware that any

notification needed to be made." IA Report, p. 000010. That means that neither one of them violated any rules.

21.

Chaplain Davis came in to the jail that evening and served as chaplain while Ms. Bolden fulfilled her very difficult task.

22.

When the meeting was finished, Chaplain Davis went over to the law library next to the chaplains' office. When he arrived there, the lights were on and the door was open, but Chaplain Williams was not there; instead he was in the housing units delivering some items to inmates.

23.

Chaplain Davis left the law library and the building, and Chaplain Williams arrived back at his office only four minutes later, so they missed one another by no more than four minutes.

CONCLUSIONS OF LAW

24.

The Civil Service Rules, Rule 9.106, requires sufficient "cause" as defined in the Civil Service Rules, to support the termination of the employment of an employee in the classified service, and this requirement applies to the Appellant.

25.

The Board finds that the evidence in this case failed to establish cause for the termination of the Appellant's employment, and finds that the termination was not done for cause as defined in the Civil Service Rules.

26.

The Civil Service Rules, Rule 11.310, provides that the Board "shall approve or disapprove the action taken by the Department Head or official," and "may concur with the decision to suspend or dismiss, or it may reinstate the employee to his position without loss of pay or status."

27.

As noted above, the Court Order entered by Judge Rooks provides that "the Board must either affirm the dismissal of [Rodney Williams] or reinstate him without penalty," leaving only two choices available to the Board under Rule 11.310.

28.

The Board SUSTAINS the Appeal, DOES NOT CONCUR with the decision to terminate the Appellant's employment, and DISAPPROVES the action taken by the Clayton County Sheriff's Office.

29.

The Appellant Rodney Williams shall be reinstated to his former position as Chaplain in the Clayton County Sheriff's Office without loss of pay or status, in accordance with Civil Service Rule 11.310.

_____
Larry Bartlett, Chairman

_____
Virginia Phillips-Hall, Member


_____[absent]_____
Mark Trimble, Member

_____
Troyce Lancaster, Member


_____
Dr. Cephus Jackson, Member

Filed this 28 day of January, 2019.

_____
Pamela Ambles, Director
Department of Human Resources

9

# IN THE SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| SHERIFF VICTOR HILL,<br>CLAYTON COUNTY, GEORGIA,<br><br>    Petitioner in Certiorari<br><br>vs.<br><br>RODNEY WILLIAMS<br>    Defendant in Certiorari<br><br>and<br><br>CLAYTON COUNTY CIVIL<br>SERVICE BOARD<br><br>    Respondent | CIVIL ACTION FILE<br><br>NUMBER<br><br>2019-CV-00727-10 |

FILED CLAYTON COUNTY, GA
2019 JUL 31 PM 3:40
JACQULINE D. WILLS
CLERK SUPERIOR COURT

## ORDER

The above-styled matter came before this Court on December 12, 2018, for a hearing on Petitioner's Petition for Certiorari. Pursuant to O.C.G.A. § 5-4-1 the standard of review for a matter before the court on a writ of certiorari "shall lie for the correction of errors committed by any inferior judicatory or any person exercising judicial powers." Having reviewed the record and heard the arguments of the Petitioner and Defendant in Certiorari, this Court finds as follows:

On February 2, 2018 Defendant, Rodney Williams was terminated from his employment on allegations of a violation of Clayton County Sheriff's Office Rules 7.05 Adherence to Law/Rules, 7.15 Neglect of Duty and 7.17 Devote time to Sheriff's Office While on Duty. It is undisputed that during his shift on the evening of January 13, 2018 Defendant streamed an NFL Playoff game on a computer in his office.

EXHIBIT "E"

Defendant appealed the termination to the Clayton County Civil Service Board (hereinafter "the Board"), a hearing was held by the Board on July 25, 2018. The Board reinstated the Defendant and imposed a three day suspension based on their finding that he violated Clayton County Sheriff's Office Rules 7.15 Neglect of Duty and 7.17 Devote time to Sheriff's Office While on Duty.

Petitioner appealed the Board's first decision on September 21, 2018, and the matter came before this Court on Certiorari. This Court held that the Board was limited in its decision making by Civil Service Rule 11.310 – *Final Decision of the Board on an Appeal.* Under rule 11.310 the Board must either concur with the decision to terminate the employee or reinstate the employee. The Board erred in their first decision regarding Defendant's termination by rendering an alternative ruling. The matter was remanded to the Board for further proceedings, and the Board returned a second decision reinstating the Defendant. The Petitioner again appealed, contending that the Board made several errors in its second decision.

In Brownlee v. Williams the Supreme Court made two findings that are relevant to the instant matter. First, that "[u]nder... the Civil Service Act of Fulton County the initial burden of proof is on the appointing authority to prove his charges against an employee" Brownlee v. Williams, 233 Ga. 548 (1975). Second is that "the board is authorized under the Act to have a hearing to determine whether there was cause to discharge the employee. If there was no cause, then the employee must be reinstated because the appointing authority was without authority to dismiss him. If there was cause for the dismissal, the Board may only reinstate where it appears that

the discharge was for "personal, political, or religious reasons and not justified." Brownlee, at 554 (1975).

Clayton County Civil Service Rule 11 broadly permits the Board to have a hearing on appeals and 11.309 (c) provides that at said hearing the Department Head, has the burden of proving its charges against the terminated employee. Clayton County Civil Service Rule 9.106 requires that the dismissal be for cause. The only portion of the Fulton County Civil Service Act, as stated in Brownlee that does not have a similar counterpart in the Clayton County Civil Service Rules and Regulations is the provision allowing the board to reinstate an employee terminated for cause if the findings also show that the termination was for personal, political, or religious reasons. While personal, political, or religious reasons for terminations may subject the County and Department Heads to legal liability under other statutes, which may confer upon the Board an authority to reinstate in an effort to protect against such, the record does not establish that personal, political, or religious reasons for the termination were alleged or that the Board considered the same and so we do not reach an analysis of whether termination for personal, political, or religious reasons justified the reinstatement of Defendant in the face of cause shown.

What the record does establish is that the Board found, in its capacity as finder of fact, that the Petitioner carried its burden of proving that Defendant did violate Clayton County Sheriff's Office Rules 7.15 and 7.17. The Board attempted to cite that violation as cause for suspension, in lieu of termination. The Clayton County Civil Service Rules grant no authority to the Board to weigh the severity or degree of the

infraction underlying the cause, nothing in the Rules requires that the Board qualify or quantify the cause in any way and as established by the prior order of this Court, the Board is not at liberty to substitute its own lesser discipline on appeal of termination decisions. It is an error for the Board to find that cause exists, as it has here, and then proceed to reinstate the employee as it has done in this case.

For the foregoing reasons, the Clayton County Civil Service Board's decision is **REVERSED**, and the decision of the Clayton County Sheriff is hereby reinstated.

SO ORDERED this 29th day of July, 2019.

_____
Hon. SHANA ROOKS MALONE,
Judge, Clayton County Superior Court
Clayton Judicial District

FILED CLAYTON COUNTY, GA
2019 JUL 31 PM 3:40
JACQULINE D. WILLS
CLERK SUPERIOR COURT